UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MARIAN L. MOORE,                    )        No. CV 08-1567-RC
                                    )
          Plaintiff,                )
                                    )        OPINION AND ORDER
     v.                             )
                                    )
MICHAEL J. ASTRUE,                  )
Commissioner of Social Security,    )
                                    )
          Defendant.                )
_____)

     Plaintiff Marian L. Moore filed a complaint on March 12, 2008,
seeking review of the Commissioner's decision denying her application
for disability benefits.  On July 24, 2008, the Commissioner answered
the complaint, and the parties filed a joint stipulation on
November 3, 2008.


**BACKGROUND**

**I**

     On August 20, 2004 (protective filing date), plaintiff applied
for disability benefits under the Supplemental Security Income program
("SSI") of Title XVI of the Social Security Act ("Act"), claiming an

1    inability to work due to lupus and chronic depression.  Certified

2    Administrative Record ("A.R.") 19, 50, 60.  The plaintiff's

3    application was initially denied on April 14, 2005, and, following

4    reconsideration, was denied again on August 21, 2005.  A.R. 37-48.

5    The plaintiff then requested an administrative hearing, which was held

6    before Administrative Law Judge Sally C. Reason ("the ALJ") on May 22,

7    2006.  A.R. 49, 164-86.  On June 21, 2006, the ALJ issued a decision

8    finding plaintiff is not disabled.  A.R. 16-25.  The plaintiff

9    appealed this decision to the Appeals Council, which denied review on

10   January 22, 2008.  A.R. 5-8, 15.

11

12                                    **II**

13       The plaintiff, who was born on May 13, 1969, is currently 40

14   years old.  A.R. 166, 168.  She has an eleventh- or twelfth-grade

15   education,[1] and previously worked as a data collector, telemarketer,

16   and cashier/checker.  A.R. 61-62, 64, 100, 166, 168-70.

17

18       David Mohamadi, M.D., treated plaintiff between April 22, 2002,

19   and May 18, 2006, and diagnosed her with systemic lupus

20   erythematosus,[2] inflammatory joint disease, myalgia, and obesity,

---

22   [1]  The plaintiff completed a disability report indicating
     she completed the twelfth-grade, A.R. 64, but at the
23   administrative hearing, plaintiff testified she had only finished
     the eleventh grade.  A.R. 168.

25   [2]  Systemic lupus erythematosus is "a chronic, remitting,
     relapsing inflammatory, often febrile multisystemic disorder of
26   connective tissue, acute or insidious in onset, characterized
     principally by involvement of the skin . . . , joints, kidneys,
27   and serosal membranes. . . .  It is marked by a wide variety of
     abnormalities, including arthritis and arthralgias, nephritis,
28   central nervous system manifestations, pleurisy, pericarditis,

among other conditions.[3]  A.R. 116-26, 138-54.  On May 18, 2006, Dr. Mohamadi opined plaintiff's "physical function is limited to 2-3 [hours] of work per day and no lifting over 20 [pounds]."  A.R. 138.

On December 16, 2002, April 29, 2003, and May 27, 2005, Albert R. Katz, M.D., a rheumatologist, examined plaintiff and diagnosed her with systemic lupus erythematosus and fibromyalgia.[4]  A.R. 114, 156-57.

On February 23, 2005, Alexander Michaelson, M.D., an internist,

---

leukopenia or thrombocytopenia, hemolytic anemia, elevated erythrocyte sedimentation rate, and positive LE-cell preparations."  Dorland's Illustrated Medical Dictionary, 1032 (29th ed. 2000).

[3]  Although plaintiff has both physical and mental complaints, plaintiff challenges only the ALJ's assessment of her physical condition; therefore, the Court will not address plaintiff's mental complaints.

[4]  Fibromyalgia is:

a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue.  Common symptoms . . . include chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue associated with this disease. Fibromyalgia's cause is unknown, there is no cure, and it is poorly-understood within much of the medical community.  The disease is diagnosed entirely on the basis of patients' reports of pain and other symptoms. The American College of Rheumatology issued a set of agreed-upon diagnostic criteria in 1990, but to date there are no laboratory tests to confirm the diagnosis.

Benecke v. Barnhart, 379 F.3d 587, 589-90 (9th Cir. 2004).

1  examined plaintiff and diagnosed her with lupus, generalized

2  arthralgia, back pain with decreased range of motion and minimal

3  muscle tenderness, and moderate obesity.  A.R. 101-05.  Dr. Michaelson

4  opined:

5

6       [plaintiff] is able to push, pull, lift, and carry 50 pounds

7       occasionally and 25 pounds frequently.  Walking and standing

8       can be done six hours in an eight-hour workday with normal

9       breaks.  No assistive devices are required for ambulation.

10      Sitting is unrestricted.  Postural activities, i.e.,

11      bending, kneeling, stooping, crawling, and crouching can be

12      done on an occasional basis.  Activities requiring agility,

13      such as walking on uneven terrain, working at heights, and

14      climbing ladders can be done on an occasional basis.  Use of

15      hands for fine and gross manipulative movements is

16      unrestricted.  Hearing and seeing are unrestricted.  There

17      are no environmental restrictions.

18

19 A.R. 104.

20

21                          **DISCUSSION**

22                             **III**

23      The Court, pursuant to 42 U.S.C. § 405(g), has the authority to

24 review the Commissioner's decision denying plaintiff disability

25 benefits to determine if his findings are supported by substantial

26 evidence and whether the Commissioner used the proper legal standards

27 in reaching his decision.  Sam v. Astrue, 550 F.3d 808, 809 (9th Cir.

28 2008) (per curiam); Vasquez v. Astrue, 547 F.3d 1101, 1104 (9th Cir.

2008).  "In determining whether the Commissioner's findings are
supported by substantial evidence, [this Court] must review the
administrative record as a whole, weighing both the evidence that
supports and the evidence that detracts from the Commissioner's
conclusion."  Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998);
Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001).  "Where the
evidence can reasonably support either affirming or reversing the
decision, [this Court] may not substitute [its] judgment for that of
the Commissioner."  Parra v. Astrue, 481 F.3d 742, 746 (9th Cir.
2007), cert. denied, 128 S. Ct. 1068 (2008); Vasquez, 547 F.3d at
1104.

     The claimant is "disabled" for the purpose of receiving benefits
under the Act if she is unable to engage in any substantial gainful
activity due to an impairment which has lasted, or is expected to
last, for a continuous period of at least twelve months.  42 U.S.C.
§ 1382c(a)(3)(A); 20 C.F.R. § 416.905(a).  "The claimant bears the
burden of establishing a prima facie case of disability."  Roberts v.
Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122
(1996); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996).

     The Commissioner has promulgated regulations establishing a five-
step sequential evaluation process for the ALJ to follow in a
disability case.  20 C.F.R. § 416.920.  In the **First Step**, the ALJ
must determine whether the claimant is currently engaged in
substantial gainful activity.  20 C.F.R. § 416.920(b).  If not, in the
**Second Step**, the ALJ must determine whether the claimant has a severe
impairment or combination of impairments significantly limiting her

from performing basic work activities.  20 C.F.R. § 416.920(c).  If
so, in the **Third Step**, the ALJ must determine whether the claimant has
an impairment or combination of impairments that meets or equals the
requirements of the Listing of Impairments ("Listing"), 20 C.F.R.
§ 404, Subpart P, App. 1.  20 C.F.R. § 416.920(d).  If not, in the
**Fourth Step**, the ALJ must determine whether the claimant has
sufficient residual functional capacity despite the impairment or
various limitations to perform her past work.  20 C.F.R. § 416.920(f).
If not, in **Step Five**, the burden shifts to the Commissioner to show
the claimant can perform other work that exists in significant numbers
in the national economy.  20 C.F.R. § 416.920(g).

    Applying the five-step sequential evaluation process, the ALJ
found plaintiff has not engaged in substantial gainful activity since
the alleged onset of disability.  (Step One).  The ALJ then found
plaintiff has systemic lupus erythematosus and obesity, which are
severe impairments, but her depression is not severe (Step Two);[5] and
plaintiff does not have an impairment or combination of impairments
that meets or equals a Listing.  (Step Three).  Finally, the ALJ
determined plaintiff can perform her past relevant work as a
cashier/checker and telemarketer; therefore, she is not disabled.
(Step Four).

                                   **IV**

    The Step Two inquiry is "a de minimis screening device to dispose

_____

        [5]   In making the Step Two determination, the ALJ
inferentially found plaintiff's fibromyalgia is not a severe
condition.

1  of groundless claims." <u>Smolen</u>, 80 F.3d at 1290; <u>Webb v. Barnhart</u>, 433

2  F.3d 683, 687 (9th Cir. 2005).  Including a severity requirement at

3  Step Two of the sequential evaluation process "increases the

4  efficiency and reliability of the evaluation process by identifying at

5  an early stage those claimants whose medical impairments are so slight

6  that it is unlikely they would be found to be disabled even if their

7  age, education, and experience were taken into account."  <u>Bowen v.</u>

8  <u>Yuckert</u>, 482 U.S. 137, 153, 107 S. Ct. 2287, 2297, 96 L. Ed. 2d 119

9  (1987).  However, an overly stringent application of the severity

10 requirement violates the Act by denying benefits to claimants who do

11 meet the statutory definition of disabled.  <u>Corrao v. Shalala</u>, 20 F.3d

12 943, 949 (9th Cir. 1994).

13

14      A severe impairment or combination of impairments within the

15 meaning of Step Two exists when there is more than a minimal effect on

16 an individual's ability to do basic work activities.  <u>Webb</u>, 433 F.3d

17 at 686; <u>Mayes v. Massanari</u>, 276 F.3d 453, 460 (9th Cir. 2001); <u>see</u>

18 <u>also</u> 20 C.F.R. § 416.921(a) ("An impairment or combination of

19 impairments is not severe if it does not significantly limit [a

20 person's] physical or mental ability to do basic work activities.").

21 Basic work activities are "the abilities and aptitudes necessary to do

22 most jobs," including physical functions such as walking, standing,

23 sitting, lifting, pushing, pulling, reaching, carrying or handling, as

24 well as the capacity for seeing, hearing and speaking, understanding,

25 carrying out, and remembering simple instructions, use of judgment,

26 responding appropriately to supervision, co-workers and usual work

27 situations, and dealing with changes in a routine work setting.  20

28 C.F.R. § 416.921(b); <u>Webb</u>, 433 F.3d at 686.  If the claimant meets her

1  burden of demonstrating she suffers from an impairment affecting her

2  ability to perform basic work activities, "the ALJ *must* find that the

3  impairment is 'severe' and move to the next step in the SSA's five-

4  step process." Edlund v. Massanari, 253 F.3d 1152, 1160 (9th Cir.

5  2001) (emphasis in original); Webb, 433 F.3d at 686.

6

7       The plaintiff contends the ALJ's Step Two determination that she

8  does not have severe fibromyalgia is not supported by substantial

9  evidence.  The Court disagrees.  The record shows only that Dr. Katz

10  diagnosed plaintiff with fibromyalgia, A.R. 114, 156; it does not show

11  that plaintiff's fibromyalgia has any effect on her ability to perform

12  basic work activities.  Therefore, this claim is without merit. See,

13  e.g., Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999)

14  ("Although the [claimant] clearly does suffer from diabetes, high

15  blood pressure, and arthritis, there is no evidence to support his

16  claim that those impairments are 'severe.'"); Matthews v. Shalala,

17  10 F.3d 678, 680 (9th Cir. 1993) ("The mere existence of an

18  impairment is insufficient proof of a disability."); Higgs v. Bowen,

19  880 F.2d 860, 863 (6th Cir. 1988) (per curiam) ("The mere diagnosis of

20  [an ailment] . . . says nothing about the severity of the

21  condition.").

22

23                                    V

24       A claimant's residual functional capacity ("RFC") is what she

25  can still do despite her physical, mental, nonexertional, and

26  other limitations.  Mayes, 276 F.3d at 460; Cooper v. Sullivan,

27  880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  Here, the ALJ found

28  //

plaintiff has the RFC for light work[6] since she can lift 20 pounds
occasionally, lift and carry 10 pounds frequently, and stand and walk
for 6 hours in an 8-hour day.  A.R. 24.  However, plaintiff contends
the ALJ's RFC finding, and ultimate decision to deny disability, are
not supported by substantial evidence because the ALJ improperly
rejected the opinions of her treating physician Dr. Mohamadi, failed
to properly assess her systemic lupus erythematosus and obesity, and
erroneously determined she was not a credible witness.

## A.   Treating Physician's Opinion:

The medical opinions of treating physicians are entitled to
special weight because the treating physician "is employed to cure and
has a greater opportunity to know and observe the patient as an
individual."  Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987);
Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir.
1999).  Therefore, the ALJ must provide clear and convincing reasons
for rejecting the uncontroverted opinion of a treating physician, Ryan
v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008); Reddick,
157 F.3d at 725, and "[e]ven if [a] treating doctor's opinion is
contradicted by another doctor, the ALJ may not reject this opinion
without providing 'specific and legitimate reasons' supported by
substantial evidence in the record."  Reddick, 157 F.3d at 725;

---

[6]  Under Social Security regulations, "[l]ight work involves
lifting no more than 20 pounds at a time with frequent lifting or
carrying of objects weighing up to 10 pounds.  Even though the
weight lifted may be very little, a job is in this category when
it requires a good deal of walking or standing, or when it
involves sitting most of the time with some pushing and pulling
of arm or leg controls.  To be considered capable of performing a
full or wide range of light work, you must have the ability to do
substantially all of these activities."  20 C.F.R. § 416.967(b).

9

1  _Tommasetti v. Astrue_, 533 F.3d 1035, 1041 (9th Cir. 2008).

2

3       The ALJ rejected Dr. Mohamadi's opinions that plaintiff's

4  "physical function is limited to 2-3 [hours] of work per day and no

5  lifting over 20 [pounds]."  A.R. 138.  He did so on the grounds that:

6  (1) Dr. Mohamadi's "records do not support the limitations suggested"

7  since they "consist of progress notes showing only occasional visits

8  and conservative medical care" and (2) examining physician Dr.

9  Michaelson found less severe limitations than Dr. Mohamadi posited.

10  A.R. 22.  These are specific and legitimate reasons for rejecting Dr.

11  Mohamadi's opinions, and these reasons are supported by substantial

12  evidence in the record.  _See_, e.g., _Connett v. Barnhart_, 340 F.3d 871,

13  875 (9th Cir. 2003) (ALJ properly rejected treating physician's

14  opinion that was contradicted by his own notes and was inconsistent

15  with other physicians' examination of claimant); _Rollins v. Massanari_,

16  261 F.3d 853, 856 (9th Cir. 2001) (ALJ properly rejected treating

17  physician's opinion that claimant was totally disabled when the

18  opinion was inconsistent with physician's examination findings);

19  _Magallanes v. Bowen_, 881 F.2d 747, 751 (9th Cir. 1989) (ALJ properly

20  rejected treating physician's opinion, which was inconsistent with

21  other evidence in the record, including an examining physician's

22  medical report).  Thus, there is no merit to this claim.

23

24       **B.  Lupus and Obesity:**

25       The plaintiff contends the ALJ did not properly consider her

26  systemic lupus erythematosus and obesity in finding she is not

27  disabled.  However, this is not correct.  First, the ALJ found

28  plaintiff's systemic lupus erythematosus is a severe impairment,

A.R. 24, and did consider the medical evidence regarding this
condition.[7]   A.R. 21-24.   Similarly, the ALJ found plaintiff's obesity
is a severe impairment, A.R. 24, and did consider plaintiff's obesity
in determining plaintiff could perform her past relevant work and is
not disabled.   In reaching this conclusion, the ALJ relied on the
opinions of Dr. Michaelson, who weighed plaintiff and evaluated her
obesity in setting limitations on plaintiff's activities.[8]   See
Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (examining
physician's medical report based on independent examination of
claimant is substantial evidence supporting ALJ's disability
determination).

     In *Celaya*, the Ninth Circuit held the ALJ committed legal error
in failing to consider a claimant's obesity although the claimant did
not specifically raise the issue.   Celaya v. Halter, 332 F.3d 1177,
1181 (9th Cir. 2003).   The appellate court's holding was based on
three reasons:

//

_____

     [7]   The ALJ also considered plaintiff's testimony regarding
her lupus symptoms, but as set forth below, properly concluded
plaintiff was not an entirely credible witness.

     [8]   Although the ALJ's Step Four RFC assessment does not
include the postural limitation Dr. Michaelson found, i.e., that
plaintiff can only occasionally bend, kneel, stoop, crawl and
crouch, etc., A.R. 104, since plaintiff's past relevant work as a
cashier and telemarketer did not require her to engage in these
activities, A.R. 62, 100, U.S. Dep't of Labor, Dictionary of
Occupational Titles, 183, 236 (4th ed. 1991); U.S. Dep't of
Labor, Selected Characteristics of Occupations Defined in the
Revised Dictionary of Occupational Titles, 333, 355 (1993), any
error in this regard is harmless.   Tommasetti, 533 F.3d at 1038;
Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

1    First, it was raised implicitly in [the claimant's] report
2    of symptoms.  Second, it was clear from the record that [the
3    claimant's] obesity was at least close to the listing
4    criterion, and was a condition that could exacerbate her
5    reported illnesses.  Third, in light of [the claimant's] pro
6    se status, the ALJ's observation of [the claimant] and the
7    information on the record should have alerted him to the
8    need to develop the record in respect to her obesity.

10   *Celaya*, 332 F.3d at 1182.  Here, the circumstances in *Celaya* are not
11   present.  First, plaintiff was represented by counsel at the
12   administrative hearing.  <u>Burch</u>, 400 F.3d at 682.  Second, the record
13   contains absolutely no evidence that plaintiff's obesity exacerbates
14   her other impairments.  <u>Id.</u>; <u>see also</u> SSR 02-1p, 2000 WL 628049 at *4
15   ("There is no specific level of weight or BMI that equates with a
16   'severe' or a 'not severe' impairment.  Neither do descriptive terms
17   for levels of obesity (e.g., 'severe,' 'extreme,' or 'morbid' obesity)
18   establish whether obesity is or is not a 'severe' impairment for
19   disability program purposes.").  Third, as discussed above, the ALJ
20   found obesity was a severe condition and considered it in determining
21   plaintiff's Step Four RFC assessment and determining plaintiff is not
22   disabled.  Thus, there is no merit to this claim.

24   **C.  Credibility**:
25       The plaintiff testified at the administrative hearing that she is
26   constantly "in a lot of pain" and tired, and her hands and joints
27   often swell up.  A.R. 171-72, 174-75.  She stated that after she was
28   diagnosed with lupus, she tried to work as a data collector, but she

1  was too tired and in too much pain.  A.R. 173.  The plaintiff also

2  averred that she lies down four or five hours a day for about half-an-

3  hour to an hour each time, A.R. 174; she cannot stand for more than 30

4  minutes; she can barely lift 20 pounds; and she had difficulty sitting

5  when she used to work a five-hour day.  A.R. 170-71, 177.

7       Once a claimant has presented objective evidence she suffers from

8  an impairment that could cause pain or other nonexertional

9  limitations,[9] the ALJ may not discredit the claimant's testimony

10 "solely because the degree of pain alleged by the claimant is not

11 supported by objective medical evidence."  Bunnell v. Sullivan, 947

12 F.2d 341, 347 (9th Cir. 1991) (en banc); Moisa v. Barnhart, 367 F.3d

13 882, 885 (9th Cir. 2004).  Thus, if the ALJ finds the claimant's

14 subjective complaints are not credible, she "'must provide specific,

15 cogent reasons for the disbelief.'"  Greger v. Barnhart, 464 F.3d 968,

16 972 (9th Cir. 2006) (citations omitted); Orn v. Astrue, 495 F.3d 625,

17 635 (9th Cir. 2007).  Furthermore, if there is medical evidence

18 establishing an objective basis for some degree of pain and related

19 symptoms, and no evidence affirmatively suggesting the claimant is

20 malingering, the ALJ's reasons for rejecting the claimant's testimony

21 must be "clear and convincing."  Carmickle v. Comm'r, Soc. Sec.

22 Admin., 533 F.3d 1155, 1160 (9th Cir. 2008).

24      Here, the ALJ found plaintiff was not "totally credible" because

26      [9]  "While most cases discuss excess pain testimony rather
   than excess symptom testimony, rules developed to assure proper
27 consideration of excess pain apply equally to other medically
   related symptoms."  Swenson v. Sullivan, 876 F.2d 683, 687-88
28 (9th Cir. 1989).

13

1   she "take[s] care of her 3 children, pay[s] her own bills, drive[s] a

2   car, perform[s] household chores, and perform[s] her own self-care

3   skills without difficulty."  A.R. 23.  These reasons are supported by

4   substantial evidence in the record, A.R. 52-56, 66-70, 107, 171, which

5   clearly shows plaintiff's daily activities are "inconsistent with the

6   presence of a condition which would preclude all work activity."

7   Curry v. Sullivan, 925 F.2d 1127, 1130 (9th Cir. 1990); see also

8   Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175 (9th Cir. 2008) (ALJ

9   properly rejected claimant's testimony because she "has normal

10   activities of daily living, including cooking, house cleaning, doing

11   laundry, and helping her husband in managing finances."); Burch,

12   400 F.3d at 680 ("[T]he ALJ articulated adequate reasons for partially

13   rejecting [the claimant's] pain testimony[,]" including claimant's

14   ability "to care for her own personal needs, cook, clean and shop[,]"

15   which show "she is quite functional."); Thomas v. Barnhart,

16   278 F.3d 947, 959 (9th Cir. 2002) (claimant's daily activities,

17   including cooking, laundry, washing dishes, and shopping, supported

18   negative credibility finding); Rollins, 261 F.3d at 857 (claimant's

19   daily activities, such as attending to her two young children,

20   cooking, housekeeping, laundry, shopping, attending therapy and

21   various other meetings every week, were inconsistent with complaints

22   of disabling pain).

23

24      The ALJ also relied on plaintiff's poor work history to support

25   her adverse credibility determination, noting plaintiff "was also not

26   very credible regarding the reasons why she felt she could not

27   work[,]" i.e., "a lack of skills and having to take care of her

28   children."  A.R. 21, 23.  Indeed, when the ALJ queried plaintiff about

why she had never worked full-time **before** her illness, plaintiff

responded "[e]ducation, my kids, skills." A.R. 172.  This finding

also is supported by substantial evidence in the record, and further

supports the ALJ's adverse credibility determination.  See, e.g.,

Thomas, 278 F.3d at 959 (ALJ's finding that claimant had an "extremely

poor work history" and showed "little propensity to work in her

lifetime" supported adverse credibility determination); Pearsall v.

Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001) ("A lack of work

history may indicate a lack of motivation rather than a lack of

ability."); Schaal v. Apfel, 134 F.3d 496, 502-03 (2d Cir. 1998) (ALJ

may properly consider claimant's poor work history in concluding she

is not credible witness); 20 C.F.R. § 416.929(c)(3) (in assessing

symptoms such as pain, fact-finder "will consider all of the evidence

presented, including information about [the claimant's] prior work

record. . . .").


    Finally, the ALJ found plaintiff "has received only occasional

routine medical care. . . ." A.R. 23.  This finding also is supported

by substantial evidence in the record, which shows, for example, that

plaintiff saw Dr. Katz, her rheumatologist, only three times between

2002 and 2005 and Dr. Katz prescribed only routine, non-steroid

medication for plaintiff's systemic lupus erythematosus.  A.R. 114,

156-57.  Thus, this finding also supports the ALJ's negative

credibility determination.  Parra, 481 F.3d at 751; Meanel v. Apfel,

172 F.3d 1111, 1114 (9th Cir. 1999).  For all these reasons, "[t]he

ALJ's reasons for [her] credibility determination were clear and

convincing, sufficiently specific, and supported by substantial

//

evidence[,]" <u>Celaya</u>, 332 F.3d at 1181; <u>Burch</u>, 400 F.3d at 681, and plaintiff's claim has no merit.

**ORDER**

IT IS ORDERED that: (1) plaintiff's request for relief is denied; and (2) the Commissioner's decision is affirmed, and Judgment shall be entered in favor of defendant.


DATE:  May 13, 2009          /S/  ROSALYN M. CHAPMAN
                             ROSALYN M. CHAPMAN
                             UNITED STATES MAGISTRATE JUDGE

R&R-MDO\08-1567.mdo
5/13/09